**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jerry Donald STEWART,
Defendant–Appellant.**

**No. 90–30016.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 1, 1990.

Decided Feb. 25, 1991.

Richard L. Fredericks, Oakridge, Or., for defendant-appellant.

Deborah J. Dealy–Browning, Asst. U.S. Atty., Eugene, Or., for plaintiff-appellee.

Before HUG and NELSON, Circuit Judges, and WALKER,* District Judge.

D.W. NELSON, Circuit Judge.

Appellant Jerry Donald Stewart appeals his sentence pursuant to the United States Sentencing Guidelines, claiming that the district court should not have enhanced his sentence by two levels for possession of a weapon during a drug offense. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 17, 1989, a three-count superseding indictment was filed charging Stewart with conspiracy to manufacture, possess, and distribute methamphetamine; manufacture of methamphetamine; and unlawful possession of a machine gun. After several months of plea negotiations, he pleaded guilty to conspiracy limited to the month of February 1988. This count charged him with conspiracy to manufacture, to possess with intent to distribute, and to distribute methamphetamine. The overt act of distribution in furtherance of the conspiracy took place at 8240 McKenzie Highway in Springfield, Oregon, the home of a codefendant. As part of the plea agreement, Stewart admitted possessing a machine gun during the time of the February 1988 conspiracy at Stewart's home at 88843 Ross Lane in Springfield, but not at 8240 McKenzie Highway. These two sites are approximately 15 miles apart.

Section 2D1.1(b)(1) of the Sentencing Guidelines provides that the basic offense level should be increased by two levels if "a firearm or other dangerous weapon was possessed during the commission of the [drug] offense." *Id.* At the sentencing hearing, the district court stated, "I'm satisfied that the guns that were found at his residence should be included. I can not conclude that in fact they were not used in connection with the drug distribution, manufacture, and sale." Using § 2D1.1(b)(1), the district court then increased Stewart's

total offense level by two. Stewart appeals.

## II. STANDARD OF REVIEW

■ The application of the Sentencing Guidelines is reviewed *de novo*. *United States v. Diego Restrepo*, 884 F.2d 1294, 1295 (9th Cir.1989). We review the district court's finding that the defendant possessed a firearm during the commission of a narcotics offense for clear error. *United States v. Garcia*, 909 F.2d 1346 (9th Cir. 1990); *United States v. Gillock*, 886 F.2d 220, 222 (9th Cir.1989).

## III. ANALYSIS

■ According to the Sentencing Guidelines, the trial court must increase the base offense level by two if "a firearm or other dangerous weapon was possessed during commission of the [drug] offense." § 2D1.1(b)(1). This "reflects the increased danger of violence when drug traffickers possess weapons." § 2D1.1, comment. (n. 3). This circuit has held that "in applying § 2D1.1(b)(1), the court need not find a *connection* between the firearm and the offense. If it finds that the defendant *possessed* the weapon during the commission of the offense, the enhancement is appropriate." *United States v. Diego Restrepo*, 884 F.2d 1294, 1296 (9th Cir.1989) (emphasis original). The Guidelines, however, create an exception. The two-level enhancement should not be applied if it is *"clearly improbable* that the weapon was connected with the offense." § 2D1.1, comment. (n. 3) (emphasis added).

■ Stewart's first argument is that the Guidelines *presume* that a weapon is connected to an offense upon proof of mere possession. The burden is then shifted to the defendant to show that the weapon was not connected with the offense. He argues that such presumption and burden shifting violate due process. We have already addressed this argument and held it untenable. *Diego Restrepo* held that

---

* The Honorable Vaughn R. Walker, United States District Judge for the Northern District of California, sitting by designation.

the language of the Guidelines does *not* require that a *connection* be shown. Rather, it requires only that the weapon be *possessed* during commission of the offense. The Commentary, therefore, creates an exception to the terms of the Guideline, not a presumption that a connection existed. The Due Process Clause does not require that the government prove the absence of every possible exception or mitigating circumstance.

884 F.2d at 1296 (emphasis original). This is consistent with the reasoning of *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). The Supreme Court there held that enhancement of sentences based on sentencing factors which came into play only *after* a defendant has been found guilty do not violate due process. Since here, as in all Guidelines adjustments, the gun enhancement occurred after the defendant was found guilty of conspiracy, there is no due process violation.

 Having disposed of this preliminary challenge, we now must decide if the weapon was "possessed" during the offense, and if so, whether it was "clearly improbable" that it was connected with the offense. Stewart argues that he pleaded guilty to the conspiracy count concerning activity in February 1988 at McKenzie Highway. Though he admits possessing a weapon in February 1988, he argues that the plea agreement expressly states that the weapon was possessed at his home at Ross Lane, 15 miles away.

Our circuit has gradually enlarged the geographical idea of "possession." In *United States v. Heldberg*, 907 F.2d 91 (9th Cir.1990), the court affirmed an enhancement where an unloaded firearm was locked in a briefcase in the trunk of a car, in which the defendant was arrested for the importation of controlled substances found in his pockets. Similarly, *United States v. Garcia*, 909 F.2d 1346 (9th Cir. 1990), determined that the defendant possessed a loaded handgun found under the front floormat, though he was in the backseat. In addition, *Diego Restrepo* upheld possession where a loaded automatic pistol was discovered between the mattress and box spring of the defendant's bed in a room from which drugs were dealt.

Yet, as Stewart correctly observes, these cases are different from his. A 15–mile gap between drugs and a gun is a far cry from bedrooms in the same house or different parts of the same car. Stewart relies on a Fifth Circuit case for facts more closely aligned with his. In *United States v. Vasquez*, 874 F.2d 250 (5th Cir.1989), a loaded pistol was found in the defendant's bedroom, which was several miles away from the scene of a drug sale. The court there said it would be a "strained interpretation" of § 2D1.1(b)(1) to conclude that the defendant possessed the weapon during the offense. *Id.* at 251.

While Stewart may believe that *Vasquez* presents a closer fit than any cases from our circuit, this contention has recently been foreclosed by *United States v. Willard*, 919 F.2d 606 (9th Cir.1990), where this circuit affirmed a gun enhancement. In that case the defendant was arrested in his car some miles distant from his place of business, where the police later found the guns used in the enhancement. *Willard* emphasized, "Our court has not *required* the guns and drugs to be found in proximity to each other, in order to support a firearm enhancement." *Id.* at 610 (emphasis original).

*Willard* also made clear that the statutory language "possessed during the commission of the offense" refers to the *entire course of criminal conduct*, not only the offense of conviction. This proposition, it explained, follows from language of the guidelines: "specific offense characteristics ... shall be determined on the basis of ... all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." § 1B1.3(a)(2); *Willard* at 610. We follow *Willard* in holding that the key is whether the gun was possessed during the course of criminal conduct, not whether it was "present" at the site. *See* § 2D1.1, comment. (n. 3).

Another critical issue in this case is that Stewart was convicted of *conspiracy.*

While the overt act of distribution of methamphetamine may well have occurred at McKenzie Highway, there is no indication that the conspiracy was limited to that site. The conspiracy charge has no definitive location, and the mere fact that the gun was not present at the place where the overt act took place does not mean that it had no connection with the conspiracy. In *Vasquez* the offense was mere possession, and that court noted that if the defendant had been convicted of the broader charge of conspiracy, the enhancement might have applied. *Id.* at 251. As *Willard* explained, in *Vasquez* "the application of the enhancement turned on the scope of the offense." *Id.* at 610. Since Stewart stipulated to the possession of a machine gun at the same time as his conspiracy charge, we find that he did possess the gun during the commission of a drug offense.

We must now determine whether it was clearly improbable that the gun was linked to the offense. In employing such a standard, the district court said it could not "conclude that in fact [the guns] were not used in connection with the drug distribution and manufacture and sale." The example of clear improbability used by the guidelines is "an unloaded hunting rifle in the closet." § 2D1.1, comment. (n. 3). We fear that not even the art of Prospero could transform a Cobry M–11 9 mm. machine gun into a sporting piece. We, therefore, conclude that the district court did not clearly err in finding the gun possession linked to the drug offense.

AFFIRMED.