UNITED STATES of America,
Plaintiff–Appellee,

v.

Phelix Henry FRAZIER, Defendant–
Appellant.

No. 91–50554.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 8, 1992 *.

Decided Feb. 3, 1993.

Nicholas Cimmarrusti, San Diego, CA, for defendant-appellant.

Peter Lewis, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before ALDISERT **, CANBY, and THOMPSON, Circuit Judges.

CANBY, Circuit Judge:

This appeal presents the question whether a defendant who buys drugs from an undercover officer should receive a base

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 3(a).

** The Honorable Ruggero J. Aldisert, Senior United States Court of Appeals for the Third Circuit, sitting by designation.

offense level under the Sentencing Guidelines that is derived from the quantity of drugs the defendant contracted or conspired to buy, or from the quantity of drugs actually delivered. We conclude that the negotiated amount determines the offense level.

## I

Phelix Henry Frazier pleaded guilty to one count of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. Section 841(a)(1). Frazier had travelled to San Diego with three friends to buy cocaine. Their contact in San Diego made the mistake of attempting to fill the order from an undercover law enforcement officer participating in a "reverse sting" operation. The contact agreed to buy two kilograms of cocaine, and a package of the drug was exchanged for cash. The purchaser was then arrested. After his arrest, the purchaser led officers to Frazier and the others.

Frazier and his friends failed to receive the exact amount of cocaine for which they had paid. The undercover agent delivered only 1994.8 grams, or slightly less than the two kilos that the defendant's coconspirator contracted to purchase. The district court, over Frazier's objection, computed his offense level on the basis of the two kilos Frazier conspired to buy rather than the lesser amount actually delivered.

That computation meant that Frazier received an initial offense level of 28 rather than 26. With a reduction of two levels because of Frazier's acceptance of responsibility, and a criminal history of I, the applicable range was 63 to 78 months. Had the court computed the offense level on the delivered amount, the range would have been 51 to 63 months. The district court sentenced Frazier to 63 months. Frazier appealed. We have jurisdiction under 18 U.S.C. Section 3742 and 28 U.S.C. Section 1291, and we now affirm.

## II

■ The district court computed Frazier's base offense level according to U.S.S.G. Section 2D1.4(a) (1991), since deleted,[1] that provided:

Base Offense Level: If a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.

Application note 1 to this guideline provided in relevant part:

If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount.

U.S.S.G. Section 2D1.4, comment (n.1). We review de novo the district court's interpretation of these provisions. *United States v. Anderson*, 942 F.2d 606, 609 (9th Cir. 1991) (en banc).

■ In a case where a defendant sold drugs to undercover agents, we ruled that the quantity of drugs the parties agreed to exchange determined the defendant's offense level. *See United States v. Alvarez–Cardenas*, 902 F.2d 734, 736 (9th Cir.1990). Frazier argues that in a "reverse sting" operation, where the government is the seller, the quantity delivered determines the offense level. We disagree.

■ We said in *Alvarez–Cardenas* that the plain language of the guideline and its commentary[2] mandated reliance on

---

**1.** The United States Sentencing Commission consolidated provisions dealing with attempts and conspiracies in drug cases with guidelines applicable to substantive drug offenses. *See* U.S.S.G. Section 2D1.4 (1992). *See* U.S.S.G. Appendix C, n. 447 at 271.

**2.** The application note provides that the amount "under negotiation in an *uncompleted* distribution" shall be used to calculate the sentence. U.S.S.G. § 2D1.4, comment. (n.1) (emphasis

added). We do not read this note to imply that, when drugs of short weight are actually delivered during a conspiracy, the weight delivered controls instead of the weight bargained for. The amount of the shortage constitutes an uncompleted distribution. Moreover, Guideline Section 2D1.4(a) itself dictates that, if the defendant is convicted of conspiracy, the offense level is the same as if the object of the conspiracy had been completed.

the negotiated quantity. "Quite clearly the offense level for a conspiracy," we concluded, "is determined by the amount that a defendant conspired to sell and not by the amount ultimately sold." *Id.* at 736. Frazier argues that the terms "traffic in a controlled substance" and "under negotiation" describe only transactions in which the defendant sells drugs.[3]

The Second Circuit has rejected that argument in a well-reasoned opinion. *See United States v. Adames*, 901 F.2d 11, 12 (2d Cir.1990).[4] " 'Traffic' and 'negotiation'[,]" said the court in *Adames*, "necessarily involve at least two parties. One does not have to be a seller to be involved in a negotiation to traffic in controlled substances." *Id.* We agree.

We pointed out in *Alvarez–Cardenas* that liability for a conspiracy turns on the object rather than on the fruits of that conspiracy. "We doubt that the informant agreed to purchase 487.56 grams of cocaine," we observed in that case, "as opposed to a half-kilogram, when he struck his bargain with [the dealer]." *Alvarez–Cardenas*, 902 F.2d at 736. The Second Circuit in *Adames* made a similar observation in support of its holding that the negotiated amount also controls in reverse sting scenarios. *See Adames*, 901 F.2d at 12 (citing 21 U.S.C. Section 841(a)(1)).

Frazier suggests that as a consequence of an assumed superior position of undercover agents who are sellers, a "negotiated amount" in reverse sting transactions reflects police objectives rather than the degree of the defendant's guilt. It is not disputed, however, that the purchaser freely contracted to purchase the negotiated amount.[5] Frazier presents no evidence that undercover agents in this case artificially inflated his sentence by pressuring the conspirators to buy more drugs than they might otherwise have wanted. Because we find no error in Frazier's sentence, the judgment is AFFIRMED.

---

3. He alternatively contends the terms are ambiguous, and that his proffered interpretation of the terms should govern under the rule of lenity. We reject this argument. The terms are not ambiguous.

4. The Fourth Circuit recently endorsed the *Adames* analysis. *See United States v. Brooks*, 957 F.2d 1138, 1151 (4th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 3051, 120 L.Ed.2d 917 (1992).

5. The guidelines permit a downward departure for a defendant who is only a minimal or minor participant in any criminal activity. *See* U.S.S.G. Section 3B1.2. Frazier makes no claim that he is eligible to benefit from this provision.

Frazier also cites authority for the proposition that exact amounts are always favored over estimates of quantity in computing offense levels. *See, e.g., United States v. Hill*, 953 F.2d 452, 460 (9th Cir.1991) (finding estimate appropriate where no seizure of drugs occurred). No conflict exists between that proposition, however, and a rule that conspirators are criminally liable for the negotiated quantity. A bargained amount is not an estimate, but a discernible quantity. *Hill* is inapplicable here, for in that case arrests were made before a defined quantity had been negotiated. *See id.* The other cases that Frazier cites are also inapposite.