21 F.3d 1117
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven Douglas GREEN, Defendant-Appellant.
 No. 93-50393.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 7, 1994.
Decided April 22, 1994.
 
 Before: BROWNING, PREGERSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Steven Douglas Green ("Green") appeals from his conviction of one count of conspiracy to possess and distribute methamphetamine, in violation of 21 U.S.C. Secs. 841(a)(1) and 846. He contends that the district court improperly read our previous mandate as a limited remand and thereby erroneously refused to consider his arguments concerning the enhancements for carrying a weapon and obstructing justice. He also contends that the district court failed to reconsider the evidence regarding the relevant quantity of methamphetamine at sentencing. We have jurisdiction under 28 U.S.C. Sec. 1291. We AFFIRM.
 
 BACKGROUND
 
 3
 Following Green's initial sentencing, he appealed to this Court the propriety of the district court's finding that he was the ringleader of the criminal enterprise. This Court affirmed the conviction but vacated the sentence and remanded the case to the district court for resentencing.
 
 
 4
 Green's arrest followed a reverse sting operation in which Chula Vista Police Agent Davidson arranged to sell five pounds of methamphetamine to Charles Williams, a coconspirator, for $30,000. Throughout the planning stage of this sale, Williams informed Officer Davidson on three occasions, including twice on the day of the sale, that he intended to purchase an additional five pounds of methamphetamine immediately after the first sale.
 
 
 5
 The sale was slated to take place on January 22, 1991, at the Days Inn Motel in Chula Vista where Agent Davidson rented two rooms. Green and the other coconspirators were lodged nearby at the La Quinta Motel in room numbers 137 and 145.
 
 
 6
 Agent Davidson testified at trial that just prior to the sale, he called room number 145 of the La Quinta Motel and spoke to Green, who confirmed that Williams left for the Days Inn Motel and took the money with him.
 
 
 7
 Once the sale occurred, the police promptly arrested Williams and his companion. Meanwhile, other police officers found an additional $34,000 in room number 137 at the La Quinta Motel. The police then checked on the occupants of room number 145. Green was present in the room. He told the police that his briefcase contained a loaded handgun, and he was arrested.
 
 
 8
 Green was tried and convicted of conspiracy to possess and distribute methamphetamine. He was sentenced to 364 months in prison based on his base offense level plus enhancements for being the ringleader, possession of a deadly weapon and obstructing justice. In his first appeal, this Court affirmed Green's conviction, but "his sentence ... [was] vacated and the case ... [was] remanded for new sentencing consistent with Part VI of this disposition." Part VI of the disposition stated that the district court clearly erred when it found that Green was the ringleader of the conspiracy.
 
 
 9
 At the resentencing, the district court said that the remand was limited to removal of the ringleader enhancement. Nonetheless, Green's attorney argued that the obstruction of justice and gun enhancements were improper. The district court refused to alter its previous findings, stating "the obstruction issue ... [arose] when your client ... lied under oath that he knew nothing about the operation and that he had any part in it." The district court also said that the gun enhancement issue was cut and dried, stating "I [the judge] have no question about that [the gun enhancement]." In addition, the district court said that the conspiracy involved 10 pounds of methamphetamine rather than 4.8 pounds as Green's attorney had alleged at resentencing. As a result, the district court calculated Green's base offense level at 38 and sentenced him to 262 months imprisonment after removing the ringleader enhancement.
 
 ANALYSIS
 I. Scope of Mandate to Resentence
 
 10
 In our Circuit, whenever a district court imposes a sentence outside its authority, we vacate the entire sentence and remand for resentencing. United States v. Blue Mountain Bottling Co., 929 F.2d 526, 529-30 (9th Cir.1991). The government argues that this case presents an unusual situation where this Court intended to remand only on a portion of Green's sentence--the part concerning an enhancement for being the ringleader of a conspiracy. In fact, there is nothing to indicate that the general rule of Blue Mountain Bottling Co. was not followed in this Court's earlier disposition.
 
 
 11
 The language in the remand order did not limit the district court's ability to resentence anew, and in any case, as shown above the district court did entertain all issues regarding resentencing. In response to Green's attorney's comments at resentencing, the district court explained its initial decisions covering enhancements for obstruction of justice and use of a gun; and that the conspiracy involved ten pounds of methamphetamine.
 
 
 12
 II. Propriety of Enhancements Imposed at the Initial Sentencing
 
 
 13
 We review for clear error the district court's decisions covering enhancements at the resentencing for obstruction of justice and possession of a gun; and that the conspiracy involved ten pounds of methamphetamine. See United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992) (factual findings underlying sentencing are reviewed for clear error).
 
 A. The Gun Enhancement
 
 14
 Green argues that the district court erred by its initial ruling that the firearm locked in his briefcase was present in furtherance of the crime. The enhancement is proper unless it is clearly improbable that the gun was connected to the offense. United States v. Restrepo, 884 F.2d 1294, 1296 (9th Cir.1989).
 
 
 15
 Green claims that his professional calling as a bounty hunter seeking fugitives who jump bail demonstrates the improbability that the gun was connected to the drug conspiracy. He argues that as a bounty hunter he is permitted and required to carry a firearm because his career is rife with hazard and that it is clearly improbable that he had the gun for any purpose other than bounty hunting. In addition, Green contends that, in any event, the mere presence of the gun is not dispositive because the weapon must be possessed during the criminal conduct. United States v. Stewart, 926 F.2d 899, 901 (9th Cir.1991) (emphasis added). Here, the drug sale took place at the Days Inn Motel while Green was at the La Quinta Motel. In fact, Green was never caught anywhere near the drugs.
 
 
 16
 Still, we disagree with Green that the facts demonstrate that his possession of the gun was not in the course of the criminal activity. He testified under oath that he has no license or permit to carry a gun, and no California statute permits a bounty hunter to carry a concealed weapon. And we have long recognized the nexus between deadly weapons and narcotics trafficking. See United States v. Guy, 903 F.2d 1240 (9th Cir.1990) (drug traffickers often carry firearms). Furthermore, this Court ruled in the first appeal that the gun was relevant evidence to demonstrate participation in the criminal activity. United States v. Green, 91-50542 at 5 (9th Cir. Aug. 18, 1992) (memorandum disposition). Therefore, it was not clearly improbable that the gun was connected to the drug conspiracy.
 
 B. Obstruction of Justice Enhancement
 
 17
 We review for clear error a district court's finding that a defendant obstructed justice. United States v. Torres-Rodriguez, 930 F.2d 1375, 1389 (9th Cir.1991). Section 3C1.1 of the Sentencing Guidelines permits upward adjustments by the sentencing court if a "defendant willfully impedes or obstructs, or attempts to impede or obstruct, the administration of justice." Id. Untruthful testimony qualifies as such an obstruction or impediment. Id.
 
 
 18
 Green argues first that the case against him was largely a question of his credibility versus the credibility of the government's witnesses. He asserts that he was severely prejudiced by the government when it failed to reveal the fact that Officer Hines, a witness against Green, was contemporaneously under indictment for selling ephedrine. He argues that this evidence was vital for impeaching the witness.
 
 
 19
 Green's argument is not persuasive, however. He offered non-believable testimony which, regardless of the evidence offered by Officer Hines, destroyed his credibility. The evidence showed that Green rented the rooms in the La Quinta Motel, and that he confirmed to Officer Davidson that Williams had left the motel with the money. Green was unlawfully carrying a concealed weapon, the hallmark of drug trafficking. This evidence demonstrates that it was not clearly erroneous for the trial court to conclude that Green testified untruthfully.[1]
 
 
 20
 Green also contends that the district court failed to make appropriate findings of perjury as required by United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993). In Dunnigan, the Court ruled that a "district court's determination that enhancement is required is sufficient ... if the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." Id. A witness testifying under oath perjures herself when "she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." Id. at 1116.
 
 
 21
 Here, the district court expressly found that "the obstruction issue ... [arose] when your client [Green] ... lied under oath that he knew nothing about the operation and that he had any part in it." Clearly, the trial judge found that Green willfully gave false testimony. Also, there is no doubt that Green's awareness and involvement in the conspiracy is a material matter. Therefore, implicit in the trial court's perjury finding is the conclusion that Green willfully gave, and intended to give, false testimony about a material matter. This satisfies the perjury test of Dunnigan and its requirement that the trial judge make a finding to this effect.
 
 C. Drug Quantity
 
 22
 To be sentenced for relevant conduct of a coconspirator, a defendant must have reasonably foreseen the conduct. U.S.S.G. Appendix C, amendment 439, Application Note 1 (Sec. 1B1.3, Application Note 1 in the Amended version of Nov. 1, 1991). Moreover, regarding narcotics, the Sentencing Guidelines provide that the object of the conspiracy, not the actual amount purchased or sold, shall determine the quantity for sentencing. U.S.S.G. Sec. 2D1.4. To this end, we consistently have held that the amount negotiated for determines the quantity of drugs for sentencing. United States v. Frazier, 985 F.2d 1001 (9th Cir.1993). Therefore, to charge Green with the entire ten pounds, we must first determine the drug quantity that was the object of the conspiracy, and then decide whether that quantity was foreseeable by Green.
 
 
 23
 To determine how much methamphetamine the conspiracy contemplated, it is helpful to recall that Williams informed Officer Davidson on three separate occasions that he intended to purchase 10 pounds of the drugs. Moreover, the coconspirators brought roughly $64,000 with them to the La Quinta Motel, more than enough to purchase 10 pounds. This evidence indicates that the conspiracy contemplated buying 10 pounds.
 
 
 24
 That this amount was foreseeable to Green can also be deduced from the facts. At the very least the conspiracy spanned the period from the initial contact made by Williams to the final contact with Officer Davidson. There is no doubt that Green rented the rooms at the La Quinta Motel from which the conspirators made their final contacts with Officer Davidson. Also, there is no dispute that room number 137 contained the box in which Green's coconspirators were storing an additional $34,000 for the second purchase. This evidence suggests that Green could reasonably foresee the contemplated 10 pound purchase.
 
 CONCLUSION
 
 25
 The facts of the instant case indicate that, on remand, the district court considered and then stood by its initial decisions, which were proper, concerning obstruction of justice, possession of a firearm, and the quantity of drugs involved in the conspiracy, after eliminating the ringleader enhancement.
 
 AFFIRMED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Green's argument concerning Officer Hines's indictment is similarly meritless because his testimony offered very little against Green. In fact, the trial judge stated that the officer's testimony was irrelevant for purposes of finding that Green's testimony was not credible